LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 28125

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

AILEEN ENOS, individually, and as Special Administrator
of the Estate of Maryann Kunewa, Plaintiff-Appellant,
v.
STATE OF HAWAII, DEPARTMENT OF LAND AND NATURAL RESOURCES,
HISTORIC PRESERVATION DIVISION; STATE OF HAWAII, DEPARTMENT
OF HEALTH; ISABELLE KNUTSON; ELIZABETH AKIMSEU;
JOHN DOES 1-20; JANE DOES 1-20; DOE PARTNERSHIPS 1-20;
DOE CORPORATIONS 1-20; DOE "NON-PROFIT" CORPORATIONS 1-20; and
DOE GOVERNMENTAL AGENCIES 1-20, Defendants-Appellees.

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 03-1-0147K)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley, Fujise, JJ.)

This case arises out of the disinterment of Maryann
Kunewa (Kunewa), the grandmother of Plaintiff-Appellant Aileen
Enos (Enos), by Elizabeth Akimseu (Akimseu) and Isabelle Knutson
(Knutson), who Enos states are her "half-first cousins." Enos
filed a complaint in the Circuit Court of the Third Circuit
(circuit court)[1] against Akimseu, Knutson, Defendant-Appellee
State of Hawai'i, Department of Land and Natural Resources,
Historic Preservation Division (DLNR),[2] and Defendant-Appellee
State of Hawai'i, Department of Health (DOH), seeking
declaratory, injunctive, and monetary relief. Akimseu and
Knutson did not answer the complaint. The circuit court entered
Default Judgment against Akimseu and Knutson which awarded Enos a
total of $27,203.79, representing $17,203.79 in special damages
and $10,000 in general damages. Akimseu and Knutson did not
appeal.

---

[1] The Honorable Ronald Ibarra presided.

[2] In this Memorandum Opinion, unless otherwise indicated, we will use
"DLNR" to refer to both the Department of Land and Natural Resources and the
Historic Preservation Division of the Department of Land and Natural
Resources.

DLNR and DOH moved for summary judgment. The circuit court granted the motions, concluding, among other things, that Enos's claims were barred by the alternate remedy exception to the State of Hawai'i's waiver of sovereign immunity under the State Tort Liability Act (STLA), Hawaii Revised Statutes (HRS) Chapter 662. The alternate remedy exception, which is set forth in HRS § 662-15(3) (Supp. 2009), provides that HRS Chapter 662 shall not apply to "[a]ny claim for which a remedy is provided elsewhere in the laws of the State[.]" Pursuant to its grant of summary judgment in favor of the DLNR and the DOH, the circuit court entered an "Amended Final Judgment as to All Claims and Parties" (Amended Judgment), which entered judgment in favor of the DLNR and the DOH and against Enos on all of Enos's claims against them.

On appeal, Enos argues that the circuit court erred in granting the DLNR's and the DOH's motions for summary judgment on her tort claims of negligence and intentional infliction of emotional distress (IIED). For the reasons set forth below, we affirm.

BACKGROUND FACTS[3/]

Kunewa was buried in 1907 on property identified as Puukala Kaulana, N. Kona, Lot 60, Grant 3816 (Puukala property).

In April 2002, Enos, by telephone, contacted Kai Markell (Markell), who was then the assistant director of the burial sites program for the DLNR. Enos told Markell that her cousins, Knutson and Akimseu, were going to dig up the remains of her grandmother, Kunewa, and sell the property. Enos said that

---

[3/] The background facts are taken from the findings of fact made by the circuit court in support of its orders granting summary judgment in favor of the DLNR and the DOH. Enos has not challenged these findings of fact on appeal and they are therefore binding on this court. Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

she did not want her grandmother's remains to be moved. Enos provided Markell with contact information for Knutson and Akimseu.

Markell called Knutson but no one answered the telephone. Markell then called Akimseu who answered. Akimseu told Markell that "they were not planning on digging anybody up, they were not going to sell the land, and they were just talking within the family about options." Markell explained that "if [the remains in question] were over fifty years old and of a Native Hawaiian, the Burial Council would have to determine their treatment, and that Akimseu and Knutson could not do anything unilaterally." Akimseu said that they were being helped by a family member with the Burial Council and that the Burial Council "did not have jurisdiction on private property." Markell "clarified to Akimseu that the Burial Council did have jurisdiction over remains on private property."

Markell called Enos and relayed to Enos the substance of his discussion with Akimseu. Between April and September 30, 2002, Enos did not communicate with Markell. In Markell's mind, the matter had been taken care of back in April.

Knutson applied to the DOH for a disinterment permit for the remains of Kunewa by an application dated September 20, 2002. Knutson claimed that she was the grandniece and next of kin of Kunewa. Knutson stated in her application that she planned to disinter Kunewa's remains, which were on Knutson's property, and rebury the remains at a local church graveyard.

On September 30, 2002, the DOH issued Disinterment Permit No. 14038 to Knutson. Attached to the permit was a standard letter advising the applicant to send a photograph of the decedent's headstone to DLNR if the death occurred over fifty years ago. Knutson did not contact the DLNR.

On September 30, 2002, and October 2, 2002, Enos called Markell and left messages asking Markell to call her. Markell did not immediately make the connection that Enos was the person who had called him back in April about her grandmother being

3

disinterred.   This was because the burial program had been dealing with other people named "Enos" and Enos did not explain in her messages why she had called.   Markell was unable to return Enos's calls.

On October 3, 2002, Enos called and spoke with Kana'i Kapeliela (Kapeliela), a cultural specialist with the burial sites program.   Enos informed Kapeliela that the remains of Enos's Hawaiian grandmother were going to be disinterred.   Enos "did not say when the remains were going to be disinterred and did not convey to Kapeliela that the matter was urgent."

On October 5, 2002, Akimseu and Knutson disinterred Kunewa's remains from the Puukala property.   On that same day, Enos called the police department on the Island of Hawai'i and her legal counsel.   Police officers went to the Puukala property and were shown the disinterment permit issued by the DOH. Akimseu and Knutson reinterred Kunewa's remains at the cemetery of the Episcopal church in Honalu, South Kona.

On October 7, 2002, Enos called Kapeliela to inform him that the remains may have already been removed.   Markell subsequently initiated an enforcement investigation by the DLNR's Division of Conservation and Resources Enforcement regarding the disinterment of the Kunewa remains.   At a Hawai'i Island Burial Council meeting, Akimseu and Knutson agreed to return the Kunewa remains to the original burial site.   On April 24, 2003, Phyllis H. McEldowney, the Interim Administrator of the Historic Preservation Division of the DLNR, issued a letter confirming the agreement of the relatives to return the Kunewa remains to the original burial site.   About a month later, Akimseu and Knutson pulled out of the agreement.

Enos subsequently filed suit in circuit court.   On October 31, 2003, Enos, the DOH, and the DLNR entered into a stipulation to have the Kunewa remains reinterred at the original

burial site.  On February 16, 2004, the Kunewa remains were returned to and reinterred on the Puukala property.

CIRCUIT COURT PROCEEDINGS

Relevant to this appeal, Enos in her first amended complaint sued the DLNR and the DOH for negligence (Count 2) and for IIED (Count 5).[4]

The DLNR filed a motion for summary judgment.  In its motion for summary judgment, the DLNR argued, among other things, that: (1) under HRS § 662-15(3) (the STLA's alternate remedy exception), the State of Hawaiʻi (State) had not waived its sovereign immunity as to any of Enos's tort claims against the DLNR; 2) Enos failed to establish a breach of duty by the DLNR or that any action by the DLNR was the proximate cause of her injuries, both of which were necessary to support her negligence claim; and 3) the DLNR's alleged inaction did not rise to the level of extreme and outrageous conduct necessary to support an IIED claim, as a matter of law.

The DOH filed a separate motion for summary judgment.  DOH argued, among other things, that: 1) Enos's tort claims against the DOH were barred under HRS § 662-15(3) and under

---

[4] In her first amended complaint, Enos also asserted a claim for declaratory and injunctive relief against the DLNR and the DOH relating to her desire to reinter the Kunewa remains on the Puukala property (Count 1) and a claim against the DLNR for misrepresentation (Count 4).  In granting the DLNR's and the DOH's motions for summary judgment, the circuit court ruled that: 1) Enos's claim for declaratory and injunctive relief was moot because the Kunewa remains had already been reinterred on the Puukala property; and 2) Enos's misrepresentation claim against the DLNR was barred by sovereign immunity.  Enos has not challenged these rulings on appeal, and we will not further discuss them.

HRS § 662-15(1) (Supp. 2009),[5] the discretionary function exception to the State's waiver of sovereign immunity under the STLA; 2) Enos failed to establish a breach of duty by the DOH, which was necessary to support her negligence claim; and 3) DOH employees did not engage in acts sufficiently outrageous to support Enos's claim of IIED.

The circuit court granted the summary judgment motions filed by the DLNR and the DOH. The circuit court concluded that Enos's negligence and IIED claims were barred by sovereign immunity. The circuit court specifically cited HRS § 662-15(3) in support of its orders granting summary judgment.

## STANDARD OF REVIEW

"We review the circuit court's grant or denial of summary judgment *de novo*," Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005), using the same standard applicable to the circuit court. Iddings v. Mee-Lee, 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c).

Wittig v. Allianz, A.G., 112 Hawai'i 195, 200, 145 P.3d 738, 743 (App. 2006).

## DISCUSSION

Enos argues that the circuit court erred in granting summary judgment in favor of the DLNR and the DOH because: 1) pursuant to the STLA, the DLNR and the DOH are not entitled to

---

[5] HRS § 662-15(1) provides:

§ 662-15. **Exceptions**. This chapter shall not apply to:

(1) Any claim based upon an act or omission of an employee of the State, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused[.]

6

sovereign immunity with respect to Enos's claims for negligence and IIED; 2) the discretionary function exception set forth in HRS § 662-15(1) is not applicable; and 3) the alternate remedy exception set forth in HRS § 662-15(3) is not applicable.

As discussed below, we conclude, under the particular facts of this case, that Enos's claims for negligence and IIED are barred under the alternate remedy exception set forth in HRS § 662-15(3). Accordingly, we need not address the other arguments raised by Enos.

I.

The statutes relevant to this appeal are as follows:

1.  HRS § 338-25.5 (1993), which regulates the disinterment of the remains of a deceased person, provides in pertinent part:

> **§ 338-25.5 Disinterment of human bodies.** (a) No corpse, nor the remains of any dead human body, exclusive of ashes, shall be exposed, disturbed, or removed from its place of burial, nor shall the receptacle, container, or coffin holding the remains or corpse be opened, removed, or disturbed after due interment, except upon written application made to the director of health for a permit therefor and upon the issuance and according to the terms of a permit granted therefor by the director. . . .
>
> (b) Notwithstanding the provisions of subsection (a), the department of land and natural resources pursuant to sections 6E-43 and 6E-43.6 may authorize exposure, removal, disinterment, or any other act without obtaining a permit from the department of health.

2.  HRS Chapter 6E, entitled "Historic Preservation," establishes a comprehensive statutory scheme for the conservation and development of historic and cultural property within the State of Hawai'i for the public good. See HRS § 6E-1 (2009).

    a.  HRS § 6E-43 (2009) provides for DLNR approval for the disinterment of human remains that appear to be over fifty years old and are not in a known, maintained, and actively used cemetery. That statute, provides in pertinent part:

> **§ 6E-43 Prehistoric and historic burial sites.**
> (a) At any site, other than a known, maintained, actively used cemetery where human skeletal remains are discovered or are known to be buried and appear to be over fifty years old, the remains and their associated burial goods shall not be moved without [DLNR's] approval.

7

(b) All burial sites are significant and shall be preserved in place until compliance with this section is met, except as provided in section 6E-43.6 [(relating to inadvertent discovery of burial sites)]. The appropriate island burial council shall determine whether preservation in place or relocation of previously identified native Hawaiian burial sites is warranted, following criteria which shall include recognition that burial sites of high preservation value, such as areas with a concentration of skeletal remains, or prehistoric or historic burials associated with important individuals and events, or areas that are within a context of historic properties, or have known lineal descendants, shall receive greater consideration for preservation in place.

b. HRS § 6E-13(b) (2009) authorizes "any person" to maintain an action for restraining orders or injunctive relief for the protection of a burial site from unauthorized or improper demolition, alteration, or transfer:

(b) Any person may maintain an action in the trial court having jurisdiction where the alleged violation occurred or is likely to occur for restraining orders or injunctive relief against the State, its political subdivisions, or any person upon a showing of irreparable injury, for the protection of an historic property or a burial site and the public trust therein from unauthorized or improper demolition, alteration, or transfer of the property or burial site.

3. Under the doctrine of sovereign immunity, the State "is immune from suit for money damages, except where there has been a clear relinquishment of immunity and the State has consented to be sued." Bush v. Watson, 81 Hawaiʻi 474, 481, 918 P.2d 1130, 1137 (1996) (citations and internal quotation marks omitted). The STLA, HRS Chapter 662, generally waives the State's sovereign immunity for the torts committed by its employees.

a. HRS § 662-2 (1993) provides:

**§ 662-2 Waiver and liability of State.** The State hereby waives its immunity for liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

b.    HRS § 662-15 provides for exceptions to the State's general waiver of sovereign immunity under the STLA.  The alternative remedy exception set forth in HRS § 662-15(3) states:

> **§ 662-15.  Exceptions**.  This chapter shall not apply to:
>
> . . .
>
> (3)    Any claim for which a remedy is provided elsewhere in the laws of the State[.]

## II.

Enos's claims for negligence and IIED against the DLNR and the DOH arise out of their employees' failure to prevent Enos's half-first cousins, Akimseu and Knutson, from disinterring Enos's grandmother.  The undisputed facts show that Enos had significant advance notice of the plans of Akimseu and Knutson to disinter the remains of Enos's grandmother.  HRS § 6E-13(b), which authorizes "any person" to seek a restraining order or injunctive relief to protect a burial site, provided an alternative remedy for Enos's claims.  Enos could have sought to prevent Akimseu and Knutson from disinterring the remains of Enos's grandmother by maintaining an action for a restraining order or injunctive relief against them.[6]

Under the particular circumstances of this case, we conclude that Enos's negligence and IIED claims against the DLNR and the DOH are barred under HRS § 662-15(3), the alternate remedy exception to the State's general waiver of sovereign immunity under the STLA.  We express no view on whether HRS § 662-15(3) would apply in other circumstances, such as when a person aggrieved by the disinterment of a relative had no advance notice of the disinterment.

---

[6] Enos admitted that she did not attempt to obtain a restraining order to prevent Akimseu or Knutson from disinterring the remains from the Puukala property.

9

CONCLUSION

We affirm the August 7, 2006, Amended Judgment which was filed by the circuit court.


DATED: Honolulu, Hawai'i, July 26, 2010.

On the briefs:

Lyle S. Hosoda
Raina P.B. Gushiken
Christopher T. Chun
Chenise Kanemoto
(Lyle S. Hosoda & Associates)
for Plaintiff-Appellant

Jill T. Nagamine
Heidi M. Rian
Deputy Attorneys General
for Defendant-Appellee
State of Hawaii, Department of
Health

Pamela K. Matsukawa
Sonia Faust
Deputy Attorneys General
for Defendant-Appellee
State of Hawaii, Department of Land
and Natural Resources, Historic
Preservation Division

*Craig H. Nakamura*
Chief Judge

*Daniel R. Foley*
Associate Judge

Associate Judge